# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| PATRICIA ANN LINCOLN | * | CIVIL ACTION NO.  10-1861 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| MICHAEL J. ASTRUE,<br>COMMISSIONER, SOCIAL<br>SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Patricia Ann Lincoln protectively filed the instant application for Title XVI Supplemental Security Income payments on May 12, 2009.  (Tr. 118-120).[1]  She alleged disability as of December 24, 2008,  because of pain in her feet from standing or walking for long periods, problems seeing with her eyes, daily headaches, and fluid build-up around both ankles.  (Tr. 126).  The claims were denied at the initial stage of the administrative process.  (Tr. 60-65). Thereafter, Lincoln requested and received a September 16, 2009, hearing before an Administrative Law Judge ("ALJ").  (Tr. 26-59).  However, in a February 26, 2010, written

---

[1]  Lincoln filed a previous application that was denied initially on December 31, 2008, and not further appealed.  *See* Tr. 132.

decision, the ALJ determined that Lincoln was not disabled under the Act, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 10-23).  Lincoln appealed the adverse decision to the Appeals Council.  On October 15, 2010, however, the Appeals Council denied Lincoln's request for review; thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 1-3).

On December 20, 2010, Lincoln sought review before this court.  She contends that the ALJ's step five determination that she can make an adjustment to other work comprised of semi-skilled occupations is not supported by substantial evidence.

## **Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the

Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## **Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be

made.

    (5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

### <u>Analysis</u>

### I.    <u>Steps One, Two, and Three</u>

    The ALJ determined at step one of the sequential evaluation process that Lincoln had not engaged in substantial gainful activity during the relevant period.  (Tr. 15).  At step two, he found that Lincoln suffers severe impairments of obesity, hypertension, osteoarthritis, and pes planus (flat feet).  (Tr. 15-16).  He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr. 16).  Plaintiff does not challenge the ALJ's determinations at steps one through three of the sequential evaluation process.

### II.    <u>Residual Functional Capacity</u>

    The ALJ next determined that Lincoln retained the residual functional capacity to perform light work, except the ability to lift/carry up to 15 pounds frequently and 30 pounds occasionally;

the ability to stand/walk for about 4 hours total and sit for 6 hours total during an eight hour work day, with the need to sit for approximately 20 minutes of each hour; the ability to push/pull no more than 5-10 pounds with her hands and 10-20 pounds with her feet; an inability to climb ladders/ropes/scaffolds; the ability to perform no more than occasional crouching, stooping, kneeling, or reaching overhead; and a moderate overall visual impairment.  (Tr. 16).[2]

Plaintiff does not challenge the ALJ's residual functional capacity assessment ("RFC"). Moreover, the RFC is substantially supported by record evidence.  *See e.g.*, Tr. 179-181, 211-247.

## III.   Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Lincoln had no past relevant work.  (Tr. 21).  Accordingly, he proceeded to step five.  At this step, the ALJ determined that plaintiff was a younger individual, with a limited education, and that transferability of skills was immaterial.  *Id.*  The ALJ observed that given Lincoln's vocational factors, and with a residual functional capacity for the full range of light work, the Medical-Vocational Guidelines directed a finding of not disabled.  20 C.F.R. § 404.1569; Rule 202.17, Table 1, Appendix 2, Subpart P, Regulations No. 4.  (Tr. 21-22).  However, because plaintiff's

---

[2]  Light work contemplates:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

ability to perform light work was reduced by further limitations, the ALJ employed vocational

expert ("VE") testimony to conclude that plaintiff could make an adjustment to other work that

exists in substantial numbers in the national economy.  (Tr. 22).  Specifically, in response to the

ALJ's hypothetical (that included plaintiff's vocational background and residual functional

capacity), the VE opined that the claimant could perform representative occupations such as

companion, *Dictionary of Occupational Titles* ("DOT") job code 309.677-010, for which there

are 132,756 jobs nationally and 2,203 jobs in Louisiana; or telephone solicitor, DOT code

299.357-014, for which there are 551,920 jobs nationally, and 2,385 jobs in Louisiana.  (Tr. 22-

50).  These occupation represent a significant number of jobs in the "national economy."  42

U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state

level and 10,000 nationally, constitute a significant number).

  Plaintiff's sole argument on appeal is that because she has no transferrable skills from any

past relevant work, as a matter of law, she cannot make an adjustment to semi-skilled work as a

companion or telephone solicitor.  In support of her argument, plaintiff cites a passage from

Social Security Ruling 83-10 which states that

> the [a]bility to perform skilled or semiskilled work depends on the presence of
> acquired skills which may be transferred to such work from past job experience
> above the unskilled level or the presence of recently completed education which
> allows for direct entry into skilled or semiskilled work . . .

SSR 83-10.

However, Social Security Ruling 83-10 addresses the capability to do other work under the

medical-vocational guidelines, not when the ALJ relies upon vocational expert testimony.  *See*

SSR 83-10, TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK--THE

MEDICAL-VOCATIONAL RULES OF APPENDIX 2.  Moreover, under the medical-vocational

guidelines and associated regulations, transferability of skills at the light exertional level does not

become an issue unless and until the claimant is at least closely approaching advanced age and further significantly limited by illiteracy, etc.  *See* Rule 202.00(c)-(f), Subpart P, Regulations App. 2; *see also*, 20 C.F.R. § 404.1568(d)(4) (discussing transferability of skills for persons of advanced age).  Although the medical-vocational guidelines typically take notice of an occupational base comprised of unskilled work, this changes for the higher age classifications, at which point the guidelines include skilled and semi-skilled work that require the claimant to have transferable skills from a prior job, or recent training that provides for direct entry into semi-skilled or skilled work.  *See* SSR 83-10.  This is because as a claimant ages, it becomes more difficult for her to make an adjustment to other work.

Here, in contrast, the ALJ relied upon VE testimony for his step five determination. During cross-examination, the VE explained that skills for purposes of specific vocational preparation ("SVP") under the DOT are gained through education, life experiences, and/or work. (Tr. 53).  The VE opined that a hypothetical claimant with plaintiff's vocational background could make an adjustment to the semi-skilled jobs that he identified.  (Tr. 53-54).  The VE's opinion is supported by pertinent regulations which provide, *inter alia*, that "[w]e will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of *age, education, and* work experience."  20 C.F.R. § 404.1560(c)(1); 20 C.F.R. § 416.960(c)(1) (emphasis added).  Furthermore, "[e]ducation is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability." 20 C.F.R. § 404.1564(a); 20 C.F.R. § 416.964(a).  Accordingly, the record reflects an adequate basis to support the ALJ's decision to defer to the expertise of the VE.  *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).

7

## Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 11th day of January 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE